**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| KAREN QUINN, individually and on behalf of all others similarly situated, | Case No. 26-11709 |
| Plaintiff, | Hon. |
| v. | |
| AVFLIGHT CORPORATION, a Michigan corporation, d/b/a AVFlight, | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| Defendant. | **JURY TRIAL DEMANDED** |

**NATURE OF THE ACTION**

1.     Plaintiff Karen Quinn brings this action individually and on behalf of all similarly situated current and former supervisory employees of Defendant Avflight Corporation d/b/a AVFlight ("AVFlight"), to recover unpaid wages, unpaid overtime compensation, liquidated damages, and other relief under the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §§ 201–219; the Michigan Workforce Opportunity Wage Act ("WOWA"), MCL 408.411 *et seq.*; and the Michigan Payment of Wages and Fringe Benefits Act ("PWFBA"), MCL 408.471 *et seq.*

1

2.     AVFlight is a Michigan corporation with its principal place of business in Ann Arbor, Michigan. From its Michigan headquarters, AVFlight develops, controls, and enforces the uniform employment policies—including the on-call mandate and compensation practices at issue—that govern supervisory employees at all of its locations nationwide.

3.     AVFlight operates as a commercial aviation ground-handling contractor for Allegiant Air, LLC ("Allegiant") and other commercial carriers at airports across the United States.

4.     AVFlight maintains a uniform, company-wide policy developed and enforced from its Ann Arbor, Michigan headquarters requiring all supervisory employees, nationwide, to remain on-call twenty-four (24) hours per day, seven (7) days per week ("24/7"), subject to a mandatory obligation to physically report to their assigned airport workstation within one (1) hour of being called at any time. AVFlight does not compensate supervisory employees for this on-call time, in violation of both the FLSA and Michigan law.

5.     Separately, and from the same Michigan headquarters, AVFlight has adopted a compensation structure that systematically fails to account for substantial work regularly performed by supervisory employees from off-site locations. Despite knowing that supervisors are performing work away from the workstation at AVFlight's direction and for its benefit, AVFlight has refused to compensate them

for that time, in violation of the FLSA's *"suffer or permit"* doctrine and Michigan law.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) over Plaintiff's FLSA claims. This Court has supplemental jurisdiction over Plaintiff's Michigan WOWA and PWFBA claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the federal claims and arise from a common nucleus of operative fact.

7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant AVFlight is a Michigan corporation with its principal place of business in Ann Arbor, Michigan, which lies within the Eastern District of Michigan. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims—including the formulation, implementation, and oversight of the unlawful on-call and compensation policies—occurred at AVFlight's Michigan headquarters within this District.

8.    This Court has general personal jurisdiction over AVFlight, a Michigan corporation with its principal place of business in this District. Accordingly, pursuant to *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392 (6th Cir. 2021), this Court may properly exercise personal jurisdiction over AVFlight with respect to the claims of all opt-in members of the FLSA Collective, wherever located, because

3

AVFlight is at home in this forum. This is the appropriate district in which to litigate a nationwide FLSA collective action against AVFlight.

## PARTIES

### I.  Plaintiff

9.     Plaintiff Karen A. Quinn is an adult resident of Kentucky. She was employed by AVFlight as an hourly supervisory employee at Louisville Muhammad Ali International Airport ("SDF"), Louisville, Kentucky, from May 2017 until her termination on October 26, 2025. At all relevant times, Ms. Quinn was an "employee" of AVFlight within the meaning of the FLSA, 29 U.S.C. § 203(e)(1). Ms. Quinn brings this action individually and as the representative plaintiff for the proposed FLSA Collective and the proposed Michigan Class. Ms. Quinn's written consent to join this collective action is attached hereto as Exhibit A.

### II.  Defendant

10.     Defendant Avflight Corporation d/b/a AVFlight is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business at 47 West Ellsworth, Ann Arbor, Michigan 48108. At all times relevant to this Complaint, AVFlight has been an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d); an "employer" within the meaning of the WOWA, MCL 408.413(b); and an "employer" within the meaning of the PWFBA, MCL 408.472(b). AVFlight's annual gross volume of sales or business exceeds $500,000,

4

and it is engaged in interstate commerce within the meaning of 29 U.S.C. § 203(b), (s).

11.     AVFlight operates ground-handling operations for Allegiant Air, LLC and other air carriers at airports nationwide. At all relevant times, AVFlight's corporate headquarters in Ann Arbor, Michigan served as the center of its operational decision-making, including the development and enforcement of the on-call and compensation policies at issue in this action.

## CHOICE OF LAW ALLEGATIONS

12.     Michigan law governs the state law claims asserted herein. Michigan's courts apply the "most significant relationship" test of the Restatement (Second) of Conflict of Laws § 188 in adjudicating contract and quasi-contract claims, including claims for unpaid wages.

13.     Under the Restatement (Second) § 188, the relevant contacts for choice of law purposes include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, and place of incorporation or business of the parties. These contacts are to be evaluated according to their relative importance to the particular issue.

14.     Michigan has the most significant relationship to the wage claims asserted herein for the following reasons: (i) AVFlight is a Michigan corporation

5

domiciled in Ann Arbor, Michigan; (ii) AVFlight's unlawful on-call and compensation policies were conceived, developed, and implemented by AVFlight management operating from its Michigan headquarters; (iii) AVFlight's decisions to withhold compensation for on-call time and off-site work were made in Michigan; (iv) AVFlight's Human Resources function, which administered employee compensation across all stations, operated primarily from Michigan; and (v) the harm to all class members flows from a single, uniform policy adopted and enforced from Michigan.

15.     Michigan has a substantial and legitimate interest in regulating the labor practices of its domestic corporations and in ensuring that employers incorporated and headquartered in Michigan comply with Michigan's wage and hour laws with respect to the workforce policies they promulgate from Michigan soil.

16.     Applying Michigan's WOWA and PWFBA to this action is consistent with the Restatement's most-significant-relationship framework. Michigan's six-year limitations period under the PWFBA (via MCL 600.5807(9)) and the remedial provisions of the WOWA and PWFBA should accordingly govern the state law claims of all class members. In the alternative, and to the extent a court determines that the law of each class member's state of employment governs, Plaintiff reserves the right to assert state law claims under the applicable law of each such state, and to seek the certification of appropriate state-law subclasses.

**FACTUAL ALLEGATIONS**

I.   **AVFlight's Business and Its Michigan Headquarters**

17.     AVFlight is a privately-held Michigan corporation that has provided aviation ground-handling services for commercial air carriers for more than twenty years. Its corporate headquarters are located in Ann Arbor, Michigan, within the Eastern District of Michigan. From those headquarters, AVFlight manages its nationwide operations, administers its human resources and payroll functions, and formulates the employment policies that govern all of its employees across all of its stations.

18.     AVFlight operates as a ground-handling contractor for Allegiant Air, LLC and other carriers at multiple airports throughout the United States, including at Louisville Muhammad Ali International Airport (SDF) in Louisville, Kentucky, where Plaintiff Quinn was employed.

19.     The supervisory workforce at each AVFlight station is subject to the same company-wide employment policies that originate from AVFlight's Ann Arbor headquarters. These include the on-call policy, the timecard and compensation system, and the remote-work policy at issue in this litigation. None of these policies were developed at the individual station level.

II.   **AVFlight's Supervisory Workforce and Non-Exempt Status**

20.     AVFlight employs supervisory employees—variously titled Supervisor, Lead Supervisor, Station Supervisor, or similar—at SDF and at other

airports throughout the United States. These supervisors oversee daily ground-handling operations, coordinate with carrier partners, manage scheduling and payroll, respond to operational irregularities, and ensure compliance with applicable regulations.

21.     AVFlight classifies and compensates most of its supervisory employees as **hourly, non-exempt** workers. As non-exempt, hourly employees, supervisors are legally entitled under both the FLSA and Michigan law to receive the applicable minimum wage for all hours worked and overtime compensation at one and one-half times their regular rate for all hours worked in excess of forty (40) per workweek.

22.     Because supervisors are paid on an hourly, non-exempt basis, they do not meet the *"salary basis"* threshold required to qualify for the executive, administrative, or professional exemptions from the FLSA's overtime requirements. See 29 C.F.R. § 541.600(a) (requiring a guaranteed salary of at least $684 per week).

23.     AVFlight accordingly has no exemption defense to the wage claims asserted herein.

### III.   The 24/7 On-Call Mandate

24.     At all times relevant to this action, AVFlight enforced a uniform, nationwide policy—originating from and administered by its Ann Arbor headquarters—requiring all supervisory employees to be on-call twenty-four (24) hours per day, seven (7) days per week as a condition of employment.

8

25. Pursuant to this policy, supervisory employees were required at all times to: (a) remain continuously reachable by telephone; (b) respond to any call from AVFlight or Allegiant management; and (c) physically report to their assigned airport workstation within **one (1) hour** of being called, regardless of the hour or day.

26. The one-hour mandatory response requirement effectively imposed a continuous geographic restriction on all supervisory employees. Supervisors could not travel more than approximately one hour from their assigned airport at any time, could not consume alcohol in any quantity that might impair their ability to respond, and could not engage in any activity that would prevent or delay a prompt response to a call.

27. This policy was explicitly incorporated into AVFlight's employee handbook ("Employee Handbook"), which states:

> It may be necessary for individuals in certain positions to be available by telephone after hours during the week or on the weekend. On call employees are expected to be present at their work station within an hour of being called in. … Employees who are on call must adhere to the drug and alcohol use and testing policies. Any violation of company policy while on call will result in disciplinary action, up to and including termination.

28. However, rather than implementing a scheduled on-call system that could assign designated individuals to specific on-call times, AVFlight implemented a company-wide policy that required all supervisory employees to be on-call 24/7.

9

29. Ironically, the Employee Handbook also states that "Team members who are required to be on call will be compensated in accordance with applicable state and federal wage and hour laws." This shows that AVFlight was aware of the very obligations that it systematically violated.

30. The on-call obligation was not merely nominal. Supervisors regularly received calls from AVFlight management and Allegiant's customer operations center at all hours addressing operational issues, lost baggage, passenger inquiries, and other matters. In addition, AVFlight's Human Resources personnel regularly called supervisors while they were known to be away from the workstation to address employee relations matters, scheduling issues, and administrative tasks.

31. Supervisors were also required to participate, while off-site, in mandatory conference calls, monthly airport operations meetings, and TSA-mandated tabletop exercises, among other recurring obligations. These off-hours obligations occurred regularly and were known to and expected by AVFlight management.

32. Despite the foregoing restrictions and obligations, AVFlight did not compensate supervisors for any on-call time unless a supervisor was physically present at the workstation and had clocked in through its on-site-only timecard system. On-call hours were systematically excluded from recorded hours and thus from compensation.

33. AVFlight's failure to compensate supervisors for on-call time was not inadvertent. The on-call obligation was an explicit, company-wide requirement, and AVFlight management was fully aware that supervisors were subject to it. AVFlight never took any steps to exclude the on-call requirement from employment terms or to separately compensate employees for it.

34. Supervisors were unable to regularly attend events, travel far, or consume alcohol without fear of disciplinary action because of the response obligation.

35. Response calls were frequent enough to materially interrupt personal time and it was known by supervisors that managers monitored responsiveness.

36. The on-call policy was mandatory and not subject to voluntary scheduling. Supervisors were disciplined or threatened with discipline for delayed responses.

## IV. The Suffer-and-Permit of Off-Site Work

37. AVFlight maintains a written policy purporting to prohibit all work performed off-site or outside the workplace. This policy was routinely and systematically disregarded at the explicit direction and with the full knowledge of AVFlight management, including management operating from AVFlight's Michigan headquarters.

38.     In practice, the operational demands of managing a commercial airline ground-handling station made it structurally impossible to confine all supervisory work to on-site, scheduled hours. Payroll management, schedule adjustments, HR matters, operational calls from Allegiant, and mandatory meetings all regularly required supervisory work to be performed remotely.

39.     AVFlight management at all levels—including at the corporate level in Michigan—was aware that supervisors performed work from off-site locations. On at least one documented occasion, AVFlight's own Human Resources Manager was working from home during a phone call with Plaintiff Quinn, establishing that off-site work was practiced at the highest levels of AVFlight management.

40.     AVFlight's timecard system requires physical presence at the workstation and cannot be accessed remotely. As a result, supervisors performing off-site work were unable to clock themselves in and were dependent on manual time entry by their managers—a practice that occurred inconsistently, partially, and without covering the full scope of off-site work performed.

41.     In most instances, supervisors who performed off-site duties received no compensation whatsoever for that time, notwithstanding AVFlight's awareness that such work was occurring and was benefiting AVFlight. AVFlight's written no-remote-work policy was never enforced uniformly, and no supervisory employee

was disciplined for performing off-site work prior to the pretextual termination of Plaintiff Quinn.

### V. Plaintiff Karen Quinn's Individual Experience

42.    Plaintiff Karen Quinn was employed by AVFlight as an hourly supervisory employee at SDF from May 2017 until her termination on October 26, 2025, a period of more than eight (8) years. Throughout her tenure, Ms. Quinn consistently received positive performance evaluations and was never counseled, warned, or disciplined for any performance deficiency, policy violation, or timecard irregularity prior to the events described herein.

43.    Throughout her employment, Ms. Quinn was subject to AVFlight's 24/7 on-call mandate, including the one-hour response requirement, and regularly performed substantial work from off-site locations, including responding to Allegiant's operational calls, managing payroll and scheduling, handling HR matters, and participating in mandatory administrative meetings. In most instances, she was not compensated for this time.

44.    Ms. Quinn has personally spoken with several other AVFlight employees who have confirmed being subject to the same 24/7 on-call mandate and the policy by which AVFlight suffered and permitted off-site work but insisted on not paying for this labor.

13

45.     AVFlight management was aware that Ms. Quinn performed off-site duties and at times manually entered time entries on her behalf to partially compensate her for what would otherwise have been entirely uncompensated work. Ms. Quinn was generally unaware when such entries were made on her behalf.

## COLLECTIVE ACTION ALLEGATIONS (FLSA — 29 U.S.C. § 216(B))

46.     Plaintiff Quinn brings her FLSA wage claims as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and all current and former supervisory employees of AVFlight who were subject to the same on-call policy and off-site work practices described herein and who were not compensated for all hours worked (the "FLSA Collective"). The FLSA Collective includes two distinct but overlapping subclasses defined as:

### The On-Call Subclass

All current and former hourly, non-exempt supervisory employees of Avflight Corporation d/b/a AVFlight (including, but not limited to, employees with titles such as Supervisor, Lead Supervisor, Station Supervisor, or similar) who were subject to a company policy or practice requiring on-call availability and a mandatory response to the workstation within one (1) hour at any time, at any AVFlight location in the United States, at any point during the two (2) years preceding the filing of this Complaint (or three (3) years in the event of willfulness or tolling).

### The Remote Work Subclass

All current and former hourly, non-exempt supervisory employees of Avflight Corporation d/b/a AVFlight (including, but not limited to, employees with titles such as Supervisor, Lead Supervisor, Station Supervisor, or similar) who were subject to a company policy or practice that failed to compensate the employee for work that was performed offsite and that AVFlight suffered or permitted, at any point

14

during the two (2) years preceding the filing of this Complaint (or three (3) years in the event of willfulness or tolling).

47. Filing this action in the Eastern District of Michigan is essential to the viability of the FLSA Collective as a nationwide action. Pursuant to *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 402 (6th Cir. 2021), federal courts may exercise personal jurisdiction over an employer with respect to the claims of all opt-in plaintiffs—including those who worked in other states—when the action is brought in the state where the employer's principal place of business or state of incorporation is located. Because AVFlight is incorporated in Michigan and has its principal place of business in Ann Arbor, Michigan, this Court may properly adjudicate the FLSA claims of all AVFlight supervisors nationwide.

48. The members of the FLSA Collective are similarly situated within the meaning of 29 U.S.C. § 216(b) and *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023), in that: (a) they are or were subject to AVFlight's uniform, nationwide on-call mandate; (b) they performed the same types of off-site duties; (c) they were compensated through the same physically-restricted timecard system that was incapable of recording off-site work; and (d) AVFlight's failure to pay wages for on-call and off-site time flowed from the same centralized, Michigan-originated policy.

49.     The number of FLSA Collective members is unknown at this time but is believed to be substantial. AVFlight operates nationwide, and supervisors at each station were subject to the same policy. The identities of FLSA Collective members are ascertainable from AVFlight's personnel, payroll, and scheduling records.

50.     Plaintiff Quinn will promptly move for Court-authorized notice to all potential FLSA Collective members pursuant to 29 U.S.C. § 216(b), informing them of this action and their right to opt in as party plaintiffs.

## CLASS ACTION ALLEGATIONS (MICHIGAN WOWA AND PWFBA — FED. R. CIV. P. 23)

51.     Plaintiff Quinn brings her Michigan WOWA and PWFBA claims pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of herself and all similarly situated current and former supervisory employees of AVFlight (the "Michigan Class"). The Michigan Class includes two distinct but overlapping subclasses defined as:

**The On-Call Subclass**

All current and former hourly, non-exempt supervisory employees of Avflight Corporation d/b/a AVFlight (including, but not limited to, employees with titles such as Supervisor, Lead Supervisor, Station Supervisor, or similar) who were subject to a company policy or practice requiring on-call availability and a mandatory response to the workstation within one (1) hour at any time, at any AVFlight location in the United States, at any point during the six (6) years preceding the filing of this Complaint.

**The Remote Work Subclass**

All current and former hourly, non-exempt supervisory employees of Avflight Corporation d/b/a AVFlight (including, but not limited to,

16

employees with titles such as Supervisor, Lead Supervisor, Station Supervisor, or similar) who were subject to a company policy or practice that failed to compensate the employee for work that was performed offsite and that AVFlight suffered or permitted, at any point during the six (6) years preceding the filing of this Complaint.

52.    In the alternative, and to the extent a court determines that Michigan law does not apply to the claims of AVFlight employees who performed work outside of Michigan, Plaintiff seeks certification of the Michigan Class limited to employees who performed work at AVFlight's Michigan-based operations, together with any appropriate state-law subclasses for employees in other states (including Kentucky, under the Kentucky Wages and Hours Act, KRS § 337.010 *et seq.*), for which Plaintiff reserves the right to seek separate certification.

53.    **Numerosity (Rule 23(a)(1)):** The Michigan Class is sufficiently numerous that joinder of all members is impracticable. Given AVFlight's nationwide operations and the six-year class period, the class includes a substantial number of individuals whose identities are ascertainable from AVFlight's employment records.

54.    **Commonality (Rule 23(a)(2)):** Questions of law and fact common to the Michigan Class predominate over individual issues. Common questions include: (a) whether AVFlight's on-call mandate constitutes compensable "hours worked" under the WOWA and PWFBA; (b) whether AVFlight's sufferance and permission of off-site work obligates it to pay wages for that work under Michigan law; (c)

17

whether Michigan law governs the claims of all class members by virtue of AVFlight's Michigan domicile and the Michigan origin of the challenged policies; (d) whether AVFlight's violations were willful; and (e) the appropriate measure of damages.

55. **Typicality (Rule 23(a)(3)):** Plaintiff Quinn's claims are typical of the Michigan Class. She was subject to the same on-call mandate, performed the same off-site duties, was compensated through the same deficient system, and was subjected to AVFlight's Michigan-made compensation policies in the same manner as all other class members.

56. **Adequacy (Rule 23(a)(4)):** Plaintiff Quinn will fairly and adequately represent the Michigan Class. She has a personal and financial interest in the outcome of this litigation, there are no known conflicts with class members, and she is represented by experienced counsel committed to the vigorous prosecution of this action.

57. **Predominance (Rule 23(b)(3)):** Common legal and factual questions predominate over any individual issues. The central question—whether AVFlight's on-call policy and off-site work practice violate the WOWA and PWFBA—is common to all class members and can be resolved through uniform proof, including AVFlight's written policies, payroll records, management testimony, and representative evidence regarding the frequency and nature of on-call obligations.

58.     **Superiority (Rule 23(b)(3)):** A class action is superior to any other available method of adjudicating these claims. Individual class members may lack the resources to pursue their claims individually, and each individual's claim may be modest in amount. Class treatment ensures uniform adjudication, promotes judicial economy, and eliminates the risk of inconsistent results.

## CAUSES OF ACTION

### Count I Fair Labor Standards Act — Unpaid Wages and Overtime: On-Call Time 29 U.S.C. §§ 206, 207, 216(b)
*(Collective Action — All FLSA Collective Members)*

59.     Plaintiff Quinn re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

60.     At all relevant times, Plaintiff Quinn and the FLSA Collective members were "employees" of AVFlight within the meaning of 29 U.S.C. § 203(e)(1), and AVFlight was their "employer" within the meaning of 29 U.S.C. § 203(d). AVFlight is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s).

61.     AVFlight's 24/7 on-call policy—requiring supervisors to remain continuously reachable, capable of responding within one (1) hour to any call, and subject to a geographic tether to their assigned airport at all times—constitutes "hours worked" within the meaning of the FLSA.

62.     The totality of these restrictions rendered supervisors "engaged to wait" within the meaning of *Armour & Co. v. Wantock*, 323 U.S. 126 (1944), and *Skidmore*

*v. Swift & Co.*, 323 U.S. 134 (1944), and as confirmed by 29 C.F.R. § 785.17. The restrictions imposed—continuous availability, strict geographic constraint, mandatory physical response, 24/7 duration, and frequent actual calls from AVFlight and Allegiant operations—precluded supervisors from effectively using their on-call time for personal purposes.

63.     By systematically failing to record or compensate on-call time as hours worked, AVFlight violated the minimum wage provisions of 29 U.S.C. § 206 and, to the extent uncompensated on-call hours caused total hours worked in any workweek to exceed forty (40), the overtime provisions of 29 U.S.C. § 207.

64.     AVFlight's violations were willful within the meaning of 29 U.S.C. § 255(a). AVFlight imposed mandatory on-call obligations and either knew or showed reckless disregard as to whether those obligations constituted compensable time. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The three-year statute of limitations applies.

65.     As a result of AVFlight's violations, Plaintiff Quinn and the FLSA Collective members are entitled to: (a) all unpaid wages for on-call hours worked; (b) all unpaid overtime compensation; (c) an equal amount as liquidated damages under 29 U.S.C. § 216(b); (d) reasonable attorney's fees and costs; and (e) such other relief as the Court deems just and proper.

20

**Count II Fair Labor Standards Act — Unpaid Wages and Overtime:**
**Off-Site Work (Suffer or Permit) 29 U.S.C. §§ 203(g), 206, 207, 216(b)**
*(Collective Action — All FLSA Collective Members)*

66.    Plaintiff Quinn re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

67.    The FLSA defines "employ" to include "suffer or permit to work." 29 U.S.C. § 203(g). An employer who knows or has reason to know that an employee is performing work—including work performed away from the employer's premises or at home—must count that time as hours worked. 29 C.F.R. §§ 785.11–12.

68.    AVFlight knew, or had reason to know, that supervisors regularly performed substantial work from off-site locations, including responding to Allegiant's operations center, managing payroll and scheduling, handling HR matters, and attending mandatory meetings. AVFlight management at the station level and at the Michigan corporate level explicitly directed this off-site work and in some instances manually entered time on behalf of supervisors to partially compensate for it, demonstrating actual knowledge of the practice.

69.    AVFlight's written prohibition on remote work does not insulate it from liability. An employer that benefits from known off-site work and takes no steps to prevent it cannot disclaim liability for wages owed by pointing to an unenforced paper policy. 29 C.F.R. § 785.13 ("[T]he mere promulgation of a rule against such

21

work is not enough. Management has the power to enforce the rule and must make every effort to do so.")

70.    By failing to record or compensate supervisors for off-site work it knew was being performed for its benefit, AVFlight violated 29 U.S.C. §§ 206 and 207. These violations were willful. 29 U.S.C. § 255(a).

71.    Plaintiff Quinn and the FLSA Collective members are entitled to: (a) all unpaid wages for off-site work performed; (b) all unpaid overtime compensation; (c) an equal amount as liquidated damages; (d) reasonable attorney's fees and costs; and (e) such other relief as the Court deems just and proper.

**Count III Michigan Workforce Opportunity Wage Act and Payment of Wages and Fringe Benefits Act MCL 408.411 et seq.; MCL 408.471 et seq.**
*(Michigan Class — Rule 23)*

72.    Plaintiff Quinn re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

73.    The Michigan Workforce Opportunity Wage Act (WOWA), MCL 408.411 *et seq.*, requires employers to pay covered employees a minimum wage for all hours worked, MCL 408.414, and overtime at one and one-half times the regular rate for hours worked in excess of forty (40) per week, MCL 408.414a. The Michigan Payment of Wages and Fringe Benefits Act (PWFBA), MCL 408.471 *et seq.*, requires employers to pay all wages owed to employees in a timely manner and prohibits unlawful deductions from or withholding of wages.

74. Michigan law governs the claims of the Michigan Class for the reasons set forth in the Choice of Law Allegations above. AVFlight is a Michigan corporation that developed and enforced the unlawful policies at issue from its Michigan headquarters. Michigan has the most significant relationship to the wage claims flowing from those policies.

75. For the same reasons set forth in Counts I and II, AVFlight's on-call mandate and its knowing sufferance of off-site work constitute hours worked for which AVFlight was obligated and failed to compensate supervisors in accordance with the WOWA and PWFBA. The standards for compensable work time under Michigan law are consistent with and parallel to federal FLSA standards.

76. Pursuant to MCL 408.419(1) and MCL 408.489, employers who violate the WOWA and PWFBA are liable for: (a) all unpaid wages and overtime compensation; (b) costs and such reasonable attorney's fees as may be allowed by the court; and (c) such other equitable relief as the court deems appropriate.

77. The applicable statute of limitations for a civil action under the PWFBA is **six (6) years**, pursuant to Michigan's general contract limitations period, MCL 600.5807(9).

78. As a result of AVFlight's violations, Plaintiff Quinn and the Michigan Class members are entitled to: (a) all unpaid wages and overtime compensation for

the six-year class period; (b) reasonable attorney's fees and costs; and (c) such other

legal and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Karen Quinn, individually and on behalf of the FLSA

Collective and the Michigan Class, respectfully requests that this Court:

(a) Enter an order permitting this case to proceed as a nationwide collective action under 29 U.S.C. § 216(b), authorizing Court-supervised notice to all similarly situated supervisory employees of AVFlight throughout the United States, and tolling the statute of limitations for all FLSA Collective members upon filing of this Complaint;

(b) Enter an order pursuant to Fed. R. Civ. P. 23(b)(3) certifying the Michigan Class, appointing Plaintiff Quinn as class representative, and appointing her undersigned counsel as class counsel for the Michigan Class;

(c) Enter judgment against AVFlight and in favor of Plaintiff Quinn, the FLSA Collective, and the Michigan Class for all unpaid minimum wages and overtime compensation for all hours worked but not compensated, including all on-call time and off-site work during the applicable class period;

(d) Award an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

(e) Award all unpaid wages and overtime compensation due under the Michigan WOWA and PWFBA for the six (6) year class period, together with reasonable attorney's fees and costs pursuant to MCL 408.419 and MCL 408.489;

(f) Award pre-judgment and post-judgment interest on all monetary awards at the applicable legal rate;

(g) Award reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b) and applicable Michigan law; and

(h) Grant such other and further legal and equitable relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Quinn, individually and on behalf of the FLSA Collective and the Michigan Class, demands a trial by jury on all issues so triable.

Respectfully submitted,

**AKEEL & VALENTINE, PLC**

By: /s/ Samuel Simkins
Shereef Akeel (P54345)
Samuel Simkins (P81210)
888 W. Big Beaver Road, Suite 350
Troy, Michigan 48084
Tel: (248) 269-9595
shereef@akeelvalentine.com
sam@akeelvalentine.com

*Attorneys for Plaintiff Karen Quinn
and the Proposed FLSA Collective and
Michigan Class*

Dated: May 26, 2026

25